**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Cynthia T. | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 18 CV 50288 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Cynthia T. appeals a denial of disability benefits. Her appeal centers on her visual and mental health impairments. For the reasons set forth below, plaintiff's motion for summary judgment is denied, the Government's motion for summary judgment is granted, and the decision of the ALJ is affirmed.

## BACKGROUND

Plaintiff suffers from a variety of medical issues including fibromyalgia, cervicalgia, and obesity. R. 16. However, because plaintiff's appeal focuses exclusively on her visual and mental impairments, the Court will limit its factual summary accordingly.

Plaintiff has complained of "macular problems" since 2006. R. 621. In April 2013, plaintiff was referred to ophthalmologist Dr. Michael Ip at the University of Wisconsin. R. 620. Dr. Ip measured visual acuity of 20/25 in the right eye and 20/20 in the left eye. R. 623. In describing her vision to Dr. Ip, plaintiff stated that "lines were stretched out" and "a little wavy

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.

still but . . . better." *Id.* She also complained of a "blurry spot" in the middle. *Id.* Dr. Ip diagnosed plaintiff with macular dystrophy and cataracts in both eyes. *Id.*

In January 2014, Dr. Jonathan O'Neil noted plaintiff's eyes were "[n]egative for photophobia, pain, discharge, redness, itching and visual disturbance." R. 1131. A few months later in May 2014, plaintiff visited Dr. Ip again and complained of increased light sensitivity but no pain. R. 1357. Plaintiff's diagnoses of macular dystrophy and cataracts in both eyes remained unchanged, and her visual acuity was 20/25 in both eyes. *Id.* Next month, plaintiff saw Dr. Michael Paxhia who found that plaintiff had best corrected visual acuity of 20/25 in both eyes. R. 1341. He also identified paracentral scotomas on her visual field, and plaintiff's retinal evaluation revealed areas of central atrophy. *Id.* After noting plaintiff's previous diagnosis of cone dystrophy, Dr. Paxhia opined that there was no known treatment or cure and that it was gradually progressive, affecting central and color vision. *Id.*

In July 2014, plaintiff's visual acuity was 20/20 for both eyes. R. 1348. And in November 2014, plaintiff saw Dr. T. Michael Nork who wrote a progress note describing an electrophysiologic evaluation for plaintiff. R. 1364. Dr. Nork opined that plaintiff had a normal full-field electroretinography ("ERG") and nearly normal multifocal ERG, except for mild central depression. *Id.* These ERGs were consistent with the anatomic appearance of plaintiff's macula and her macular dystrophy diagnosis. *Id.*

In June and August 2015, Dr. Hosni Begum noted that plaintiff denied any blurry vision or double vision. R. 1454, 1464. A year later in June 2016, plaintiff saw Dr. Herbert Becker who noted "Macular Dystrophy, OS>OD, light sensitivity." Plaintiff's visual acuity was 20/20 in the right eye and 20/25 in the left eye. R. 1509. On the side of his report, Dr. Becker wrote nonspecific changes and repeat in six months. R. 1508.

The administrative law judge ("ALJ") held an initial hearing on May 20, 2016 and a supplemental hearing on April 5, 2017 to allow more medical evidence to be entered. At the initial hearing, plaintiff testified that she stopped driving in October 2014 because the brightness of the sun during the day and the brightness of the lights from cars during the night made it unsafe to drive. R. 99. She also has to print everything on color paper because white paper is too bright. *Id.* Plaintiff testified that the bright lights generally hurt her eyes and give her headaches. R. 103. She also cannot distinguish between dark colors like black, brown, purple, and blue. R. 104. At the supplemental hearing, she testified that her vision "declined" since the last hearing. R. 43. She still has problems with colors and bright lights, and she cannot read large print for more than fifteen to twenty minutes because the lines get wavy. R. 44. Plaintiff also complained that she cannot do the dishes because she cannot see the dirty spots. *Id.*

Dr. Jerda Riley, a board-certified ophthalmologist and impartial medical expert, testified at the supplemental hearing and responded to two sets of medical interrogatories. Dr. Riley identified plaintiff's previous cone dystrophy diagnosis but thought that it was significant that her vision had remained pretty decent and her central vision had remained intact. R. 50. Plaintiff's vision remained 20/20 in the right eye and 20/25 in the left eye from 2014 through the last recorded exam in 2016. R. 50–51, 1509. Dr. Riley opined that there was no central scotoma or blind spots. R. 51. Dr. Riley noted that Dr. Becker's notes indicated macular dystrophy, and it was nonspecific. *Id.* According to Dr. Riley, nonspecific meant that Dr. Becker could not identify any central scotoma "to go along with cone dystrophy." R. 54. In other words, while plaintiff has nonspecific macular dystrophy, Dr. Becker's notes were not specific to cone dystrophy. R. 53. Dr. Riley noted that Dr. Becker wanted retesting in six months. R. 55. According to Dr. Riley, macular dystrophy can be progressive, but it can also be stationary.

R. 53. Plaintiff's visual acuity showed that, from 2014 to her last exam in 2016, there was no macular dystrophy progression and her visual acuity had not worsened. *Id.* Based on her review of the complete medical record and plaintiff's testimony, Dr. Riley determined the following visual limitations: she should work in situations where she could wear tinted glasses but can function with large, medium, and small objects; she should avoid ordinary hazards; she should avoid constant precision detailed work. R. 56–57.

A vocational expert ("VE") also testified at the supplemental hearing. Relevant to this appeal, the ALJ asked the VE: "And is there any problem with wearing tinted glasses when exposed to bright light, in your opinion, for these jobs?" R. 70. The VE answered, "No." *Id.* The ALJ asked for the VE's basis, to which the VE responded, "Well, one, people – the people wear sunglasses in bright conditions all the time. I don't think people have a problem with it as long as you perform a job." *Id.* The VE was also asked if wearing tinted glasses when exposed to bright light indoors would not be a problem, to which the VE responded, "Well, I don't think there are any bright lights indoors in these two jobs." R. 71. Later, the ALJ asked the VE whether the need to wear tinted glasses would affect the availability of jobs. R. 71. The VE answered, "No, it would not impact these jobs at all, no." *Id.* The VE also testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). R. 65. Plaintiff's attorney later questioned the VE but never raised any potential conflict between the VE's testimony and the DOT.

Regarding plaintiff's mental health impairments, she has sought treatment at Rosecrance since January 2012. In January 2012, she was diagnosed with major depressive disorder, panic disorder without agoraphobia, and personality disorder. R. 402. In February 2016, she was diagnosed with bipolar I disorder, posttraumatic stress disorder ("PTSD"), and borderline

personality disorder. R. 1521. On May 13, 2014, plaintiff was examined by Dr. Julie Harris, Psy.
D. for a consultative examination. R. 1333–36. She documented that plaintiff was "oriented to
person, place and situation" and that she was able to recall several facts when engaging in
memory testing. R. 1335. Dr. Harris opined that plaintiff did not need assistance in regard to
managing funds on her behalf. *Id.* Plaintiff reported problems with focusing on one task. R.
1336. She also reported having symptoms of PTSD relating to the murder of her son in 2011. R.
1335. Plaintiff testified that she had anxiety and difficulty with sudden noises and crowds. R. 98.
She also testified that she treats her mental illness with individual counseling, group therapy, and
medication. R. 43.

Following the supplemental hearing, the ALJ issued her decision denying plaintiff
disability benefits. At step two, the ALJ identified the following severe impairments: cervicalgia,
fibromyalgia, obesity, cone dystrophy, affective disorder (bipolar/depression),
anxiety/posttraumatic stress disorder, personality disorder, with polysubstance dependence in
remission. R. 16. At step three of her decision, the ALJ found that plaintiff did not have an
impairment or combination of impairments that met or medically equaled the severity of a listed
impairment. *Id.* The ALJ noted that plaintiff never argued that she met or equaled a listing and
that none of the state agency consultants who reviewed the medical evidence found that
plaintiff's impairments met or equaled any listing. The ALJ considered listings 12.04
(depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders),
and 12.08 (personality and impulse-control disorders) and found that plaintiff's impairments did
not meet or equal any of these listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1. In making this
finding, the ALJ considered the paragraph B criteria, which requires at least one "extreme" or
two "marked" limitations in four areas of mental functioning: understanding, remembering, or

applying information; interacting with others; concentrating, persisting, or maintaining pace; and

adapting or managing oneself.[2] *Id.* Each mental disorder listing has unique paragraph A criteria,

and they all share identical paragraph B criteria. *Id.* Plaintiff must satisfy both paragraph A and

paragraph B criteria under listings 12.04, 12.06, and 12.08.[3] The ALJ found that plaintiff had

"mild" limitations as to understanding, remembering, or applying information and adapting or

managing oneself. R. 17–18. She found that plaintiff had "moderate" limitations as to interacting

with others and concentrating, persisting, or maintaining pace. R. 18. Thus, plaintiff's

impairments did not satisfy paragraph B criteria. The ALJ also found that there was no evidence

to establish paragraph C criteria.

Before step four, the ALJ found that plaintiff had a residual functional capacity ("RFC")

to perform light work with several restrictions. Regarding her mental limitations, plaintiff's work

should be limited to simple, routine, and repetitive tasks, she can occasionally interact with the

public, and she needs occasional supervision. R. 19. Regarding her visual limitations, plaintiff

could only perform jobs that do not require color discrimination, do not require exposure to

sunlight, and can be performed while wearing tinted glasses when exposed to bright light, even

while indoors. R. 19. Plaintiff may occasionally read newspaper size print but no more than

frequent detailed precision work involving objects no smaller than a coin. *Id.* The ALJ gave

---

[2] An ALJ must evaluate the effects of the mental disorder based on a five-point rating scale, which includes:
      a. No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.
      b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
      c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
      d. Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
      e. Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.
20 C.F.R. Pt. 404, Subpt. P, App. 1.
[3] Alternatively, plaintiff can meet or equal the paragraph C criteria alone for listings 12.04 and 12.06, but plaintiff does not dispute that she did not meet or equal paragraph C criteria.

significant weight to Dr. Riley's assessment because she was an impartial ophthalmologist, she was an accepted medical expert for disability issues, and her assessment was "thorough, detailed and included all the medical evidence." R. 25. The RFC includes all of Dr. Riley's suggested visual limitations and additionally includes a limitation for only occasional reading.

Later at step five, the ALJ found that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. Based on the ALJ's findings in her five-step analysis, the ALJ concluded that plaintiff was not disabled under the Social Security Act.

### STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to see if it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Accordingly, the reviewing court takes a very limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). An ALJ only needs to "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). But even when adequate record evidence exists to support the ALJ's decision, the decision will not be affirmed if the ALJ does not build

an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d

539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the

ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *6 (N.D. Ill. Oct. 29, 2014).

## DISCUSSION

**The ALJ did not fail to confront plaintiff's need to wear tinted glasses.**

Plaintiff's first argument is that the ALJ ignored a line of evidence supporting disability

by failing to confront plaintiff's need to wear tinted glasses while working indoors. As the

Government points out, however, the ALJ never rejected or discounted plaintiff's need to wear

tinted glasses. In fact, contrary to plaintiff's assertion, the ALJ did consider plaintiff's need to

wear tinted glasses and incorporated this limitation into plaintiff's RFC. The ALJ explicitly

found that plaintiff's RFC included the need to wear tinted glasses when exposed to bright light

even while indoors. R. 19.

Plaintiff also attacks the ALJ's reliance on the VE's testimony. To plaintiff, the VE's

testimony was speculative and ambiguous because the VE did not definitively answer whether an

accommodating employer would be required to allow plaintiff to wear her tinted glasses. A

remand may be necessary if an ALJ relies on a VE's testimony that is vague, confusing, or

ambiguous. *See Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) ("[T]he vocational expert's

testimony is ambiguous. Thus, substantial evidence does not support the ALJ's conclusion[.]");

*Overman v. Astrue*, 546 F.3d 456, 465 (7th Cir. 2008) ("Because the ALJ's ruling was premised

entirely on testimony that conflicted with the DOT and *otherwise was vague and confusing*, this

case must be remanded for further proceedings.") (emphasis added). However, the Court finds no

ambiguity in the VE's testimony. The VE was asked "And is there any problem with wearing

tinted glasses when exposed to bright light, in your opinion, for these jobs?" R. 70. The VE

answered, "No." *Id.* The VE was later asked "if they were exposed to bright light indoors and needed to wear tinted glasses, would that affect the availability of these jobs?" R. 71. The VE answered, "No, it would not impact these jobs at all, no." *Id.* The Court finds no ambiguity in the VE's testimony.

Somewhat related, plaintiff also argues that the VE's testimony cannot be relied on because the ALJ did not appropriately determine whether the VE's testimony was consistent with the DOT. First raised in her reply brief, plaintiff relies on *Holtz v. Astrue*, No. 07-C-314-C, 2007 WL 5323758 (W.D. Wis. Nov. 8, 2007) and SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) to support this argument. Plaintiff waived this argument because it was raised for the first time in plaintiff's reply brief. *See Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016). However, even if the Court did not find waiver, plaintiff's argument is unavailing because she misreads the law. SSR 00-4p states, in relevant part:

> The Responsibility To Ask About Conflicts
> When a [VE] provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between [the vocational expert] evidence and information provided in the DOT. In these situations, the [ALJ] will:
> • Ask the [VE] if the evidence he or she has provided conflicts with information provided in the DOT; and
> • If the [VE's] evidence appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). This responsibility includes two basic obligations. The first is the "affirmative responsibility" to ask about "any possible conflict" with the DOT. *Id.* The second obligation, which is triggered if the VE's testimony "appears to conflict" with the DOT, is to resolve that conflict by eliciting a "reasonable explanation" for it. *Id.* Thus, a reasonable explanation is only required when there is an apparent conflict between the VE's testimony and the DOT. If plaintiff's counsel fails "to raise a possible violation of SSR

00-4p at the administrative level[, it] does not forfeit the right to argue later that a violation occurred." *Overman*, 546 F.3d at 463. However, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without assistance." *Id.*

Here, the ALJ explicitly asked the VE if his testimony was consistent with the DOT, and the VE responded "Yes." R. 65. The VE unambiguously testified that wearing tinted glasses would not affect the availability of housekeeping, cleaner, and recreation aide jobs. R. 71. Plaintiff's attorney questioned the VE but never raised any potential conflict between the VE's testimony and the DOT. Because the consistency of the VE's testimony and the DOT went unchallenged, the ALJ was entitled to rely on the VE's testimony unless plaintiff argues that there was an apparent conflict that was "obvious enough that the ALJ should have picked up on [it] without assistance." *Overman*, 546 F.3d at 463. Plaintiff does not identify any such conflict or even suggests a conflict exists. Because plaintiff failed to raise any conflict at the administrative hearing and failed to argue any obvious conflict on appeal, the ALJ was entitled to rely on the VE's uncontradicted testimony.

**The ALJ did not cherry pick and ignore evidence of plaintiff's visual limitations.**

Next, plaintiff generally argues that the ALJ cherry picked and ignored evidence related to plaintiff's visual limitations. The ALJ gave significant weight to Dr. Riley's assessment, but plaintiff claims that the ALJ ignored the following pieces of evidence documenting vision loss: (1) a May 15, 2014 progress note documenting complaints of increased light sensitivity; (2) Dr. Becker's findings of some abnormalities and plaintiff's complaints of vision loss and photophobia; and (3) the abnormal November 5, 2014 ERG, which showed macular pigmentary disturbance and outer retinal abnormality confirmed to the foveal region.

"[T]he ALJ need not provide a written evaluation of every piece of evidence." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). She must only "minimally articulate . . . her justification for rejecting or accepting specific evidence of a disability." *Id.* (internal quotation marks omitted). Here, plaintiff lists some pieces of evidence that the ALJ did not specifically discuss in her decision and some pieces of evidence that the ALJ did discuss. Plaintiff is correct that the ALJ did not specifically mention Dr. Ip's May 15, 2014 progress note documenting complaints of increased light sensitivity. *See* R. 1357. However, this is not a contrary line of evidence that the ALJ ignored as plaintiff claims. The ALJ thoroughly discussed plaintiff's complaints of light sensitivity in numerous ways. The ALJ cited that plaintiff could not drive due to the brightness of the sun during the day and the brightness of the lights of cars at night. R. 20. She also considered plaintiff's complaints of her difficulty reading white paper because it is too bright and that bright lights gave her headaches. *Id.* The ALJ also identified that her light sensitivity was documented in Dr. Becker's notes. R. 22. Finally, the ALJ adopted Dr. Riley's suggested limitation—that plaintiff be allowed to wear tinted glasses while working indoors— into her RFC. *See* R. 19, 56. Because the ALJ already addressed plaintiff's light sensitivity complaints, the Court finds that the ALJ "satisfied [her] minimal duty to articulate [her] reasons and make a bridge between the evidence and the outcome[.]" *Rice*, 384 F.3d at 371.

Plaintiff also claims that the ALJ ignored "Dr. Becker's findings of some abnormalities and plaintiff's complaints of loss of vision and photophobia." Dkt. 12 at 6. Plaintiff does not cite what abnormalities and what complaints the ALJ did not consider. This argument is perfunctory and undeveloped, and thus it is waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). Even if not waived, the ALJ thoroughly discussed Dr. Riley's testimony and Dr. Becker's notes, which indicate that plaintiff had "macular dystrophy, left worse than right, and light sensitivity,

with no pain and 20/20 visual acuity on the right and 20/25 on the left." R. 22. As described above, the ALJ also thoroughly considered all of plaintiff's complaints regarding her vision loss, light sensitivity, and photophobia in both the initial and supplemental hearings. Specifically, the ALJ cited plaintiff's inability to drive due to the brightness of the daylight and the car lights, her inability to distinguish dark colors, her difficulty reading white paper because it is too bright, her difficulty cleaning dishes because she cannot see the dirt, and her headaches as a result of bright lights. *See* R. 20.

Similarly, contrary to plaintiff's claim, the ALJ also considered the ERG performed on November 5, 2014. The ALJ cited to this exact ERG, noting that plaintiff had "normal full field vision and nearly normal multifocal vision, except for mild central depression consistent with a diagnosis of macular dystrophy." R. 22 (citing Ex. 11F/16). Dr. Riley also considered this ERG's findings in reaching his conclusions regarding plaintiff's visual limitations. R. 59–60. Plaintiff is simply asking this Court to reweigh the considered evidence in her favor, which this Court cannot do. *See Clifford*, 227 F.3d at 869 ("In our substantial evidence determination, we review the entire administrative record, but do not reweigh evidence . . . .").

Further, plaintiff has failed to meet her "burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018). Plaintiff cites pieces of evidence that she believes support further visual limitations, but plaintiff fails to specifically identify what limitation should have been added to plaintiff's RFC to address these pieces of evidence. Dr. Riley testified that she reviewed the complete medical record and listened to plaintiff's testimony at the hearing. R. 47, 49. Based on her review and evaluation of the medical evidence, Dr. Riley concluded that plaintiff had the following limitations: she should work in

situations where she can wear tinted glasses, but can function with large, medium, and small objects; she should avoid ordinary hazards; she should avoid constant precision detailed near work, like threading needles and work requiring interpretation of colors; her vision does not prevent working with coin size or larger objects. R. 56–57. The ALJ incorporated all of Dr. Riley's recommended limitations, which she may do under SSR 96-5p. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996) ("[A]n adjudicator may decide to adopt all of the opinions expressed in a medical source statement[.]"). The ALJ even added another limitation for only occasional reading to address plaintiff's issues with distortion when staring too long. R. 25. Plaintiff simply has not identified how plaintiff's RFC should change. Courts in this district have rejected a plaintiff's argument that the ALJ failed to discuss a particular piece of evidence where the plaintiff does not explain how the RFC should have been changed. *See, e.g.*, *Lawrence P. v. Saul*, No. 18-CV-5763, 2019 WL 3554451, at *5 (N.D. Ill. Aug. 5, 2019) ("But Plaintiff fails to identify how these exam findings translate into any functional limitations."); *Ronald B. v. Berryhill*, No. 18-CV-4973, 2019 WL 2173776, at *5 (N.D. Ill. May 20, 2019) ("Plaintiff describes this finding as 'ominous' but does not explain its significance or how this finding should have altered the ALJ's RFC analysis."); *Vincent A. v. Berryhill*, No. 16 C 7136, 2019 WL 2085104, at *9 (N.D. Ill. May 13, 2019) ("Merely identifying various post-DLI impressions, diagnoses, complaints, or procedures, without more, does not establish a work-related functional limitation.").

Plaintiff tacks on one more argument: the ALJ improperly relied on Dr. Riley's interpretations of Dr. Becker's treatment notes. According to plaintiff, Dr. Riley assumed that Dr. Becker's recommendation that plaintiff return for retesting ruled out a diagnosis of cone dystrophy. However, contrary to plaintiff's characterization of Dr. Riley's testimony, Dr. Riley

never explicitly ruled out cone dystrophy. Rather, she believed that Dr. Becker's notes did not indicate a more specific diagnosis of cone dystrophy at that time due to the lack of central scotoma. The ALJ did rely on the fact that Dr. Riley emphasized that "her vision has remained pretty decent" and her vision remained 20/20 in the right eye and 20/25 in the left eye. R. 22 (citing R. 50). However, Dr. Riley did not rule out cone dystrophy, and the ALJ considered cone dystrophy in her analysis. The ALJ included cone dystrophy as a severe impairment. R. 16. The ALJ also included visual limitations in plaintiff's RFC related to cone dystrophy such as no color discrimination. R. 19. Plaintiff has not provided any evidence that contradicts Dr. Riley's testimony, and thus, the ALJ was entitled to rely on it. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("The ALJ was entitled to rely on medical experts when no contrary evidence is presented."). Further, as explained above, given the limitations already included in plaintiff's RFC, it is unclear to the Court how the RFC should have been altered. Again, plaintiff has failed to meet her burden to explain what limitations should have been added to her RFC.

**The ALJ did not err in failing to obtain a psychological expert.**

Plaintiff's final argument is that the ALJ should have obtained a psychological expert regarding the listings 12.04, 12.06, and 12.08 analysis. The Government argues in response that the ALJ did rely on expert opinions in concluding that these listings were not met. It points to the ALJ's statement at step three that "none of the State agency consultants who reviewed the medical evidence found that claimant's impairments met or equaled a listing." R. 17. The State agency consultants, Dr. M.W. DiFonso, Psy.D. and Dr. Donald Hensen, Ph.D., evaluated listings 12.04 and 12.06 and concluded that plaintiff did not meet or equal listings 12.04 or 12.06. R. 124–25, 139–40. Specifically, they concluded that plaintiff's impairments did not meet or equal

the paragraph B criteria contained in these listings. R. 125, 139.[4] In her reply brief, plaintiff does not respond to this argument; in fact, she abandons her arguments on this issue altogether. As such, plaintiff has waived this argument, and this Court need not address it. *See, e.g.*, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Corey Z. v. Saul*, No. 18 CV 50219, 2019 WL 6327427, at *8 (N.D. Ill. Nov. 26, 2019); *Roxanne R. v. Berryhill*, No. 18 C 5484, 2019 WL 2502033, at *6 n.6 (N.D. Ill. June 17, 2019).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied, the Government's motion for summary judgment is granted, and the decision of the ALJ is affirmed.


Date: February 5, 2020                     By:  _____
                                                Lisa A. Jensen
                                                United States Magistrate Judge

---

[4] While the state agency consultants did not consider listing 12.08, plaintiff only challenges the paragraph B criteria determination. Listings 12.04, 12.06, and 12.08 all have the same paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Thus, a paragraph B determination for listings 12.04 and 12.06 would similarly support a paragraph B determination for listing 12.08. *See Guthrie v. Astrue*, No. 10-CV-03180, 2011 WL 3041365, at *23 (N.D. Ill. July 22, 2011).